Meyer Schwadel and Leona Schwadel v. Commissioner.
Schwadel v. Commissioner
Docket No. 7138-65.
United States Tax Court
T.C. Memo 1968-179; 1968 Tax Ct. Memo LEXIS 122; 27 T.C.M. (CCH) 877; T.C.M. (RIA) 68179; August 12, 1968. Filed *122 Joseph P. Marcelle, 15 Park Row, New York, N. Y., for the petitioners. Rudolph J. Korbel, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Taxable year
Tax
Addition to tax under sec. 6653(a) [1]
1959
$32,494.38
$1,624.72
1960
20,853.78
1,042.69
Petitioners have conceded the disallowances covering expense reimbursements for 1959 and business expenses for 1959 and 1960 and the inclusion in 1960 income of additional salary received from Lesbrook Corporation. The medical expense deduction involves a technical adjustment. The remaining issues are: (1) The extent to which unexplained bank deposits constituted taxable income to petitioners in both 1959 and 1960; (2) The extent to which petitioners realized taxable income from the sale of raincoats in 1959; (3) The extent to which petitioners realized taxable capital gain from the sale of securities in 1959; (4) Whether petitioners are liable for the 5 percent addition to tax under section 6653(a) *123 for 1959 and 1960. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife who had their legal residence in Queens, New York, at the time of the filing of the petition herein. They filed joint income tax returns for the calendar years 1959 and 1960 with the district director of internal revenue, Brooklyn, New York. Leona is a party to this proceeding only by virtue of having signed such returns. Any reference herein to "petitioner" shall be deemed to mean Meyer. During the taxable years 1959 and 1960, petitioner made deposits in an account with the Manufacturers Trust Company aggregating $30,807.79 and $40,419.80, respectively. The foregoing amounts are unreported taxable income to petitioner with the following exceptions: (a) $8,000 in 1959 representing loans from petitioner's mother, Fannie Schwadel, of $3,500 and $4,500. (b) $5,000 in 1960 representing a loan from petitioner's mother. (c) $3,000 in 1959 representing an exchange transaction with one Eddie Schwartz. 878 (d) $3,659.68 in 1960 representing the proceeds of a refinanced loan to petitioner from the Manufacturing Trust Company. (e) $2,700 *124 in 1960 representing loan repayment to petitioner by one George Levine. Petitioner issued three checks to the order of A.J. Kupperman on July 18, 1960 in the amounts of $1,000, $1,500, and $2,000, respectively. All three checks bear the blank endorsements of Kupperman and a Dr. Paul Schwadel and were cleared through the Bank of America in Los Angeles, California. Petitioner issued a check for $3,000 to one Eddie Schwartz on December 8, 1959. The check is labelled "exchange' on its face. It bears the blank endorsement of Schwartz and cleared on December 8, 1959. During 1959 petitioner realized an unreported taxable net profit from the sale of raincoats as follows: Sales proceeds
$43,369.09
Cost 20,218.96
Net profit
$23,150.13
In June 1960, one Nathan Malschick, d/b/a Malschick Clothing Co., brought an action in the United States District Court for the Southern District of New York against petitioner and others for conversion and/or misappropriation of funds between November 3, 1958 and April 15, 1959. In November 1961, Malschick's claim against petitioner was settled for $5,000. During 1959, petitioners realized unreported short-term capital gain of $2,082.33, *125 consisting of $1,142.73 from the sale of shares of Canadian Marconi and $939.60 from the sale of shares of Sullivan City. During 1959 and 1960, petitioners intentionally failed to keep and maintain adequate books and records. At least part of the deficiency for each of the taxable years 1959 and 1960 was due to negligence or intentional disregard of rules and regulations. Opinion The posture of this purely factual case leaves a great deal to be desired. Despite considerable leniency by the Court with respect to the presentation of petitioner's position and despite the fact that petitioner was at all times represented by counsel, evidence which might have been presented was not presented. The testimony of petitioner, who was present throughout the trial and was his own principal witness, was less than satisfactory. A key witness was not questioned, although the record was expressly left open for the taking of his deposition subsequent to trial, when he would be available, and we have been furnished with no explanation for this omission. Instead, petitioner has sought to supply additional data on brief which has no foundation whatsoever in the record. Within the framework of *126 such enormous gaps, we have endeavored, as best we could, to determine the essential facts in order to assure petitioner, of the maximum protection feasible under the circumstances. The issue as to unexplained bank deposits essentially involved petitioner's claim that such deposits represented loans from, or exchange transactions with, third parties or repayments of loans made by petitioner to one George Levine. With respect to $8,000 in 1959 and $5,000 in 1960, these were claimed by petitioner to represent loans from his mother, Fannie Schwadel, and we have so found. There is a direct correlation between the dates of withdrawal of these amounts from a savings account maintained by petitioner's mother with The East New York Savings Bank and the dates of deposit of identical amounts in petitioner's account with Manufacturers Trust Company. Three thousand dollars is claimed to have been a loan to petitioner from, or an exchange transaction with, one Eddie Schwartz. Petitioner first testified that this was represented by a deposit in that amount in the account at the Manufacturers Trust Company on April 14, 1959. On the other hand, on most of the other unidentified deposits, petitioner's *127 testimony was that he could not readily remember what they specifically represented or correlate the dates, and on cross-examination he stated he couldn't "recall just when" he borrowed this amount from Schwartz. Petitioner also testified that an exchange transaction was involved, and the face of the check so indicates. If it was an exchange, it is hard to understand how the two ends of the transaction could have been separated by eight months. The transcript of petitioner's account indicates that a deposit of $1,500 was made on December 9, 1959 and a deposit of $2,000 was made on December 10, 1959, and that two checks, one for $3,000 and one for $500, were charged against the account on December 9, 1959. While the evidence is not entirely solid, we have, as our findings of fact show, 879 accepted the explanation that is corroborated in part by the "exchange" label on the face of the check, which appears to have been placed there contemporaneously with its issuance. Four thousand five hundred dollars is alleged to represent loans from one A.J. Kupperman. Petitioner claimed that this amount consisted of $3,000 deposited in petitioner's account on May 29, 1959 and $1,500 deposited *128 on December 9, 1959, both of which are claimed to be unidentified by respondent. Petitioner's specific testimony on these items is suspect because of the vagueness of his testimony and his admitted lack of recall capacity with respect to most other items. Moreover, Kupperman was available to testify by deposition (to which respondent had no objection) and the Court specifically held the record open for this purpose. His deposition has not been filed nor has any explanation been forthcoming from petitioner. [2] Finally, we note that the three checks, all on July 18, 1960, claimed to have represented repayments of these alleged loans, were endorsed in blank by Kupperman and one Dr. Paul Schwadel, whose surname is identical with that of petitioner. The record herein is silent on this latter point and we are not prepared to consider the identity coincidental. It should also be noted that it is more likely that the $1,500 deposit on December 9, 1959 came from Eddie Schwartz. See p. 7, supra. Petitioner has failed to convince us that $4,500 of the unidentified deposits were loans from Kupperman. *129 The bulk of the unexplained deposits were claimed to represent repayments of loans from petitioner to one George Levine. He was called as a witness but he claimed the Fifth Amendment and refused to testify on the grounds that he might incriminate himself. At the trial, petitioner's counsel did not request the Court to direct Levine to answer the questions propounded to him as to the nature of his relationship with petitioner nor did he take exception to the Court's decision not to direct Levine to answer. He now argues on brief that Levine gave no basis for his refusal to answer and that the Court left the "use of the privilege solely and completely in the witness' own discretion." To put it mildly, such assertion ignores significant portions of the record herein. Levine was under two criminal indictments at the time he testified herein and was scheduled to go on trial with respect to one of the indictments approximately two weeks later. The Court held Levine until the second day of the trial herein so that he could appear with counsel, whom the Court questioned. Only after all this occurred did the Court decide not to direct Levine to answer. Its decision was predicated on the *130 clear indication that his testimony might well incriminate him and that, therefore, under United States v. Chandler, 380 F. 2d 993 (C.A. 2, 1967), he should not be required to testify. None of the authorities cited by petitioner holds otherwise; indeed, they affirmatively support the Court's decision. It would be a travesty on justice to have allowed the need for secondary evidence in a civil tax case to prevail over a real possibility of self-incrimination in criminal proceedings. In the final analysis, petitioner's lack of proof is due to his own failure to keep adequate records or other evidence of his transactions with Levine which would have made Levine's testimony unnecessary. Petitioner also asserts that Levine's refusal to testify cannot be used against petitioner. Assuming without deciding that petitioner's assertion in this regard is correct, it does not follow that we must willingly accept petitioner's own self-serving testimony as to the purported loan transactions with Levine. That testimony was most general and vague at best and we find it unconvincing. There are in the record, however, two telegrams, on August 31, 1960 and October 27, 1960, which we are *131 satisfied emanated from Levine and which tend to indicate that Levine intended to pay money to petitioner. The later telegram which was sent on a Thursday, states that Levine would see petitioner on Friday, which would appear to be the next day. October 31, 1960 was on a Monday and an unidentified deposit of $2,700 was made on that day. Although we may be stretching things, we are inclined to believe that, to the extent of this amount, unidentified deposits were not income to petitioner and we have so found. Further than this, we are not prepared to go. The remaining unidentified deposits are claimed on brief to involve miscellaneous transactions such as a loan from M. Simon, 880 reimbursements of expenses from various corporations, and a payment from a stockholder. There is not one shred of evidence in this record on these matters. Beyond this, we note that two items, claimed to represent reimbursed travel and entertainment expenses from Lesbrook Corporation, are in round amounts of $500 each. In the absence of any proof that the claimed expenses were specifically vouchered for and actually expended by petitioner as agent for Lesbrook, it would appear that they would be includable *132 in petitioner's income and it would be up to petitioner to prove an offsetting deductible expense. We turn now to the net profit of $23,150.13 which respondent claims petitioner realized from the sale of raincoats and failed to report in 1959. Petitioner's brief contains numerous calculations purporting to show that respondent's computation of the cost of the raincoats is erroneous. Thus, petitioner contends that labor charges for only 1,589 units, instead of 2,245 units, were included in cost and that therefore he should be allowed an additional cost of $2,624. Petitioner also claims that no cost for 909 suburban coats was allowed and that from the record at least $19,500 was paid for such coats, in the form of $14,500 alleged to have been advanced to Al Schwartz in 1959 and $5,000 claimed to have been paid to Malschick in 1961. The fact of the matter is that, aside from some vague testimony by Al Schwartz, who was called by petitioner but declared by the Court to be a hostile witness, petitioner's calculations on brief have no support whatsoever in the record. For aught that appears, the gross amount of $43,369.09 which respondent's deficiency notice sets forth as the sales proceeds *133 could have been limited to 1,589 units. Moreover, we have no way of determining on the record whether, if additional units were included in sales proceeds, they were not also included in cost. There is no evidence as to the make-up of the $20,218.96 which respondent allowed as cost of goods sold. Moreover, we have serious doubts that the amounts of $14,500 and $5,000 should properly be considered part of costs in 1959. The evidence as to the expenditure of the $14,500 is extremely sketchy and we are not satisfied that it was in fact paid. As to the $5,000, even if petitioner was entitled to report his dealings in raincoats on an accrual basis, there is no evidence that petitioner, at any time during 1959, considered himself obligated to pay anything to Malschick. The latter did not bring suit until 1960 and the obligation to pay did not become fixed until 1961. With respect to the gain from the unreported sale of securities set forth in respondent's deficiency notice for 1959, the record is also silent, although the Court specifically called attention to this omission at the trial. Petitioner's brief seeks to cure this omission by stating what the lowest price of the securities [was] *134 purported to be during a one-year period prior to the purported dates of sale and requesting us to accept that price as fixing petitioner's cost. Clearly, this is not evidence and, in any event, even petitioner's brief does not contain any indication that petitioner in fact acquired the securities during the one-year period. As far as the 5 percent addition to tax under section 6653(a) is concerned, the record speaks for itself and amply sustains our finding of fact that petitioner was negligent and/or intentionally disregarded rules and regulations. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
2. Respondent in his brief specifically pointed to the failure to file Kupperman's deposition despite the fact that, subsequent to the trial, respondent's counsel advised petitioner's counsel of his availability when the appointment with Kupperman was arranged. Petitioner's reply brief ignores respondent's comments.↩